UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. DYKES-BEY,

      Plaintiff,

                                CASE NO. 2:13-CV-13813

v.                          JUDGE PATRICK J. DUGGAN
                                MAGISTRATE JUDGE PAUL KOMIVES

O.T. WINN, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (docket #19)

I.    RECOMMENDATION: The Court should grant defendants' motion to dismiss.

II.    REPORT:

A.    *Background*

Plaintiff Robert L. Dykes-Bey, a state prisoner, commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. At the times relevant to this complaint, plaintiff was incarcerated at the Saginaw Correctional Facility in Freeland, Michigan. Defendants are Warden Lloyd Rapelje, Deputy Warden O'Bell T. Winn, Sergeant Roland Price, and Corrections Officer Joseph Crawley. Plaintiff alleges that on September 15, 2011, Eckstein, another inmate and plaintiff's cellmate, received a note threatening both plaintiff and Eckstein.[1] Plaintiff alleges that he packed his cell that evening, intending to ask for protective custody. Before he could do so, while exiting the unit for breakfast on the morning of September 16, he was assaulted by an unknown inmate. He reported the matter to a staff member, who escorted him to health care for treatment.

---

[1] This summary of plaintiff's allegations is based on both the statement of facts plaintiff sets forth in his complaint and the documents attached to the complaint.

Plaintiff alleges that he was then placed in temporary segregation for three days.  On September 19, defendant Winn told plaintiff that he would not transfer plaintiff to protective segregation, and he was returned to the general population.  Attached to plaintiff's complaint is an investigation report, which states that plaintiff indicated that plaintiff could not identify the attacker and was possibly a member of the Melanics, the "organization" plaintiff thought was responsible for the attack.  Based on these facts and the fact that plaintiff did not owe the debt, the Security Classification Committee determined that plaintiff's claims could not be adequately substantiated and that he had no reason to be in fear as he denied owing the debt that allegedly motivated the assault.  Plaintiff filed a grievance challenging this determination, which was denied.

Plaintiff alleges that on October 20, 2011, he was approached by three black inmates in the yard.  One of the inmates told plaintiff to "get out of the yard or get more of what you got before."  Plaintiff immediately returned to his unit and informed defendant Price of the incident.  Plaintiff alleges that Price refused to believe his story, and ordered him to return to his cell without investigating the incident.  Plaintiff refused to comply, stating that he'd rather be placed in segregation.  Defendant Price issued a misconduct report based on plaintiff's failure to comply with his order, and took plaintiff to segregation.  At an administrative hearing held on October 31, 2011, plaintiff was found not guilty of the misconduct, the hearing officer concluding that plaintiff was justified in not following defendant Price's orders due to a significant risk of harm.  On November 1, 2011, defendant Crowley told plaintiff to pack his belongings so that he could be returned to the general population.  Plaintiff again refused to comply, and defendant Crowley issued a misconduct report.  Plaintiff was again found not guilty.  Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the

2

threat of an attack.  Plaintiff further alleges that defendants Price and Crawley violated his right to due process of law by writing false misconduct tickets.  Finally, plaintiff alleges that defendant Winn deprived him of equal protection by approving Eckstein, a white inmate who was not assaulted, for protective custody, but not approving him for such custody.

The matter is currently before the Court on defendants' motion to dismiss, filed on January 28, 2014.  Defendants contend that they are entitled to dismissal because: (1) plaintiff's complaint fails to allege that defendant Rapelje was personally involved in the alleged deprivation of his rights; (2) plaintiff's complaint fails to state a claim under the Eighth Amendment; and (3) plaintiff's complaint fails to state a due process claim.  Defendants also contend that they are entitled to qualified immunity.  Plaintiff filed a response to defendants' motion on February 27, 2014.

B.    *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6).  In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim.  *Id*. at 47.  Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47.  However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

3

As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

Ordinarily, a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if

the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, Rule 10 provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED. R. CIV. P. 10(c). Thus, the Court may consider the exhibits attached to plaintiff's complaint in deciding whether the complaint states a claim upon which relief may be granted. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (in deciding a motion to dismiss, the court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *Realtek Indus., Inc. v. Nomura Secs.*, 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996).

C.      *Analysis*

        1.      *Defendant Rapelje*

        Defendants contend that defendant Rapelje is entitled to dismiss because plaintiff has failed to allege that he was personally involved in the alleged deprivation of his rights. The Court should agree. It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must

5

allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement of the defendant."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

Here, plaintiff alleges no facts that show defendant Rapelje's personal involvement in the alleged deprivation of his constitutional rights.  Plaintiff alleges only that defendant Rapelje "is held accountable, as he is responsible for all decisions concerning safety, security, and discipline at the institution."  Compl., Statement of Claim, at 1.  This alleges liability on the part of defendant Rapelje solely on the basis of his supervisory role over defendants.  As explained above, this is insufficient for liability under § 1983.  Accordingly, the Court should conclude that defendant Rapelje is entitled to dismissal.

2.      *Failure to Protect*

Defendants next contend that they are entitled to dismissal with respect to plaintiff's failure to protect claims.  The Court should agree.

*a. Legal Standard*

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense.  In its application by the courts, the amendment actually protects a wide assortment of interests.  It proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S.

6

153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials,

> who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28. The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff

7

of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective

component is contextually driven and is responsive to "'contemporary standards of decency.'"

*McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the

officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*,

501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an

official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at

302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying
> humane conditions of confinement only if he knows that inmates face a substantial
> risk of serious harm and disregards that risk by failing to take reasonable measures
> to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may

be liable even if he does not know the exact nature of the harm that may befall a particular inmate.

*Id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not

know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably

under the circumstances. *Id*. at 844-45.

As with other Eighth Amendment claims, plaintiff must show that the assault was sufficiently

harmful to satisfy the objective prong of the Eighth Amendment test, and that defendant acted with

deliberate indifference to satisfy the subjective prong. *Farmer*, 511 U.S. at 846-47. Accordingly,

to be liable for an assault by an inmate, a prison official must have had: "1) actual knowledge, 2)

of a substantial risk, 3) that serious harm would befall [the plaintiff]." *Rider v. Louw*, 957 F. Supp.

983, 986 (E.D. Mich. 1997) (Cohn, J.); *see also*, *Farmer*, 511 U.S. at 844. Thus, under *Farmer*, a

claim that prison officials should have prevented an inmate assault will be upheld only where the

plaintiff shows that the prison officials knew or should have known of the risk of an assault and

8

failed to take reasonable measures to abate that risk.  *See, e.g.*, *Knight v. Gill*, 999 F.2d 1020, 1022 (6th Cir. 1993); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).

### b. Analysis

It does not appear that plaintiff alleges defendants violated his Eighth Amendment rights by failing to protect him from the actual assault that was committed against him.  Rather, he appears to complain only about their subsequent failure to take steps to protect him from another assault. To the extent he is basing his claim on defendants' failure to protect him from the initial assault, defendants are entitled to dismissal.  Plaintiff makes no allegation that defendants knew of any prior altercation between plaintiff and the inmate who assaulted him, nor does he allege that defendant knew or should have known that this prisoner in particular posed a threat to plaintiff for a particular reason.  As another court has explained, "[p]risons are dangerous places full of dangerous people. Prisoners *are* dangerous, which is precisely why many are confined in the first place." *Langston v. Peters*, 93 C 461912, at *6 (N.D. Ill. Aug. 2, 1995), *aff'd*, 100 F.3d 1235 (7th Cir. 1996).  There is no evidence that defendant knew of and disregarded a specific threat of harm facing plaintiff, and thus plaintiff cannot show that defendants were deliberately indifferent to his safety by failing to protect him from the assault.

With respect to plaintiff's claim that defendants were deliberately indifferent to his safety because they failed to take steps to protect him from a future assault, defendants are likewise entitled to dismissal.  Regardless of whether plaintiff was actually at risk of substantial harm, the fact that the harm never materialized bars his Eighth Amendment claim.  Directly on point is the court's decision in *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996).  In *Babcock*, the court was presented

9

with "the question whether or not a . . . prisoner who was not assaulted by, and who is no longer at

risk from, fellow inmates may nevertheless maintain a [civil rights] claim for money damages based

solely on prison officials' past failure to take measures to protect the prisoner from inmates known

to pose a danger to the prisoner." *Id.* at 270.   In answering this question in the negative and

concluding that fear of assault is not enough to state an Eighth Amendment claim, the court

reasoned:

> However legitimate Babcock's fears may have been, we nevertheless believe that it
> is the reasonably preventable assault itself, rather than any fear of assault, that gives
> rise to a compensable claim under the Eighth Amendment.  Babcock's claim of
> psychological injury does not reflect the deprivation of "the minimal civilized
> measures of life's necessities," that is the touchstone of a conditions-of-confinement
> case.  Simply put, Babcock alleges, not a "failure to prevent harm," but a failure to
> prevent exposure to risk of harm.  This does not entitle Babcock to relief.

*Id.* at 272 (citations omitted) (quoting, respectively, *Wilson*, 501 U.S. at 298, and *Farmer*, 511 U.S.

at 832); *see also*, *Wilson v. Yaklick*, 148 F.3d 596, 601 (6th Cir. 1998) (quoting approvingly from

*Babcock*).   Accordingly, the Court should conclude that defendants are entitled to dismissal of

plaintiff's Eighth Amendment claim.

   3.   *False Misconduct Tickets*

   Plaintiff also claims that he was denied due process by the issuance of false misconduct

tickets based on his failure to obey defendants' orders to return to his cell in general population.  In

his complaint, plaintiff presents this claim solely as a due process claim.  In his response to

defendants' motion, plaintiff also presents this claim as a retaliation claim.  In either case,

defendants are entitled to dismissal.

   *a.  Due Process*

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or

10

property, without due process of law[.]"  U.S. CONST. amend XIV, § 1.  By its terms, therefore, the

particular procedures required by the clause apply only to deprivations of "life, liberty, or property;"

they do not apply to deprivations of other interests.  *See Board of Regents v. Roth*, 408 U.S. 564, 569

(1972) ("The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property.").  Nothing in

plaintiff's complaint implicates a protected interest in life or property, and thus the only question

is whether the allegedly false misconduct reports implicate a liberty interest.  The Court should

conclude that they do not.  Plaintiff cannot establish a violation of a protected liberty interest based

on his allegation that the misconduct was false or not supported by the evidence.  "A prisoner has

no constitutionally protected immunity from being falsely accused of misconduct.  The prisoner only

has a right to due process of law during the disciplinary proceedings against him concerning the

allegedly false misconduct charges."  *Riley v. Church*,  874 F. Supp. 765, 768 (E.D. Mich. 1994)

(Gadola, J.) (citations omitted), *aff'd*, 81 F.3d 161 (6th Cir. 1996); *accord Jackson v. Madery*, 158

Fed. Appx. 656, 662 (6th Cir. 2005) ("False accusations of misconduct filed against an inmate do

not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair

hearing."); *Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004); *Jackson v. Hamlin*, 61

Fed. Appx. 131, 132 (6th Cir. 2003).  Plaintiff does not allege that he was not afforded a fair

hearing:  he was allowed to present his version of events, and indeed he was found not guilty of the

misconduct charged.  Because plaintiff received the process that he was due, he cannot establish a

constitutional violation.

*b.  Retaliation*

In his response to defendants' motion, plaintiff argues that defendants Price and Crowley

11

issued the false misconduct tickets in retaliation against him.  In order to succeed on a retaliation claim, plaintiff must establish three elements:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.).  However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Id*. at 399.  While the adverse action inquiry is ordinarily a question of fact for the jury, some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law.  *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99.

Here, plaintiff's claim fails for two reasons.  First, plaintiff did not plead a retaliation claim in his complaint.  Nowhere in his complaint does plaintiff allege that defendants' writing of the misconduct tickets was done in retaliation; rather, he alleges simply that the misconduct charges were false.  A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion to dismiss.  *See Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).  Second, even in his response to defendants' motion he does not assert that he engaged in any protected conduct.  Although he claims that defendants retaliated against him, he nowhere states, nor alleges in his complaint, for what in particular defendants retaliated against him.  Notably, he nowhere asserts that defendants retaliated against him for exercising his First Amendment rights, which is what a retaliation claim requires.  Nor does plaintiff allege or assert any facts from which an inference of retaliation may be inferred.

12

Plaintiff's "conclusory allegations of retaliatory motive unsupported by material facts [are] not . . . sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted). Accordingly, the Court should conclude that defendants are entitled to dismissal of this claim.

4. *Equal Protection*

Finally, plaintiff alleges that defendant Winn "discriminated against the Plaintiff when he approved that prisoner Eckstein (who was not assaulted) be given protection, but denied the Plaintiff (who was assaulted) protection. The only conceivable reason is that prisoner Eckstein is white and the Plaintiff is black." Compl., Statement of Claim, at 2. This allegation is insufficient to state a plausible equal protection claim.

"An equal protection claim must assert that the plaintiff suffered class-based discrimination." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (citing *McClesky v. Kemp*, 481 U.S. 249, 292 (1987)). Thus, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Suspect and quasi-suspect classes under the Equal Protection Clause include those based on race, religion, alienage, national origin, ancestry, gender, and illegitimacy. *See Owens v. Ventura County Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999). The facts themselves do not give rise to a plausible inference of discrimination. As plaintiff's allegations and attached documents show, plaintiff and Eckstein were not similarly situated. Eckstein was placed in protective custody immediately after the assault to plaintiff, when it was too late to protect plaintiff but not too late to protect Eckstein; Eckstein, not plaintiff, was the focus of the inmate who assaulted plaintiff; and, the prison officials

13

determined, rightly or wrongly, that plaintiff was not facing a threat of harm. In light of these distinctions apparent from plaintiff's own allegations, he does not plausibly allege that he and Eckstein were similarly situated in all relevant aspects. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("[S]imilarly situated individuals must be very similar indeed."). Further, plaintiff's conclusory assertion of disparate treatment is insufficient to state a claim. As another court has recently explained:

> In a case such as this one, where Plaintiff challenges the actions of custodial officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir.1988). Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279 (1987); *Washington v. Davis*, 426 U.S. 229, 242 (1976). Further, conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. *GJR Inv., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1367–68 (11th Cir.1998); *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir.1987).

*Flournoy v. Duffie*, No. 1:10–CV–104, 2012 WL 4378099, at *6 (Sept. 7, 2012), *magistrate judge's report adopted*, 2012 WL 4711545 (M.D. Ala. Oct. 3, 2012). Plaintiff's unadorned allegation of his personal belief that defendant Winn was motivated by his race is insufficient. *See Tolan v. Cotton*, 854 F. Supp. 2d 444, 465 (S.D. Tex. 2012); *cf. Turnboe v. Gundy*, 25 Fed. Appx. 292, 293 (6th Cir. 2001) ( "[C]onclusory allegations without any factual support fail[] to state an equal protection claim."). Accordingly, the Court should conclude that defendants are entitled to dismissal of plaintiff's equal protection claim.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has failed to state a claim upon which relief may be granted with respect to any of the claims asserted in his complaint. Accordingly, the Court should grant defendants' motion to dismiss.

14

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: March 3, 2014                              s/Paul J. Komives
                                                 PAUL J. KOMIVES
                                                 UNITED STATES MAGISTRATE JUDGE


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 3, 2014.

                                                 s/ Kay Doaks
                                                 Case Manager

15