UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. DYKES-BEY,

       Plaintiff,                         Civil Action No. 13-CV-13813

v.                                           Honorable Patrick J. Duggan

O.T. WINN, et al.,

       Defendants.
_____/

**OPINION AND ORDER (1) GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, and (3) SUMMARILY DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

## I. INTRODUCTION

This is a prisoner civil rights lawsuit brought pursuant to 42 U.S.C. § 1983. Proceeding *pro se*, Plaintiff Robert L. Dykes-Bey, an African-American prisoner confined to the Saginaw Correctional Facility (SRF), claims that prison officials provided greater protection to a white inmate than they did to Plaintiff in response to a threat made against both of them. The Court previously dismissed all of the claims asserted in Plaintiff's complaint except for his equal protection claim. *See Dykes-Bey v. Winn*, No. 13-CV-13813, 2014 WL 1431094 (E.D. Mich. Apr. 14, 2014).

On August 7, 2014, Plaintiff filed a motion for summary judgment. Defendants filed an untimely response to that motion on September 8, 2014. Defendants concede that their response was filed outside the twenty-one day deadline for filing a response to a dispositive motion. *See* E.D. Mich. LR 7.1(e)(1)(B). Defendants' counsel explains that he "incorrectly calendared the response date . . . using the 28-day response time of the Western District [of Michigan] instead of the 21-day response time used in the Eastern District." Resp. to Pl.'s Mot. for Default J. at 1 (ECF No. 43 Page ID 334).

In light of Defendants' untimely response to Plaintiff's summary judgment motion, Plaintiff filed a motion for default judgment on September 17, 2014. Plaintiff argues that default judgment should be entered in his favor because Defendants' failed to file a timely response to his summary judgment motion. The Court will summarily deny Plaintiff's motion for default judgment. Courts do not impose case-dispositive sanctions for a one-time, non-prejudicial, honest mistake of counsel, *see United Coin Meter Co., Inc. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir. 1983) ("Judgment by default is a drastic step which should be resorted to only in the most extreme cases."), and Plaintiff's request for such relief is inappropriate.

In their response to Plaintiff's motion for summary judgment, Defendants request that summary judgment be entered in their favor pursuant to Federal Rule

of Civil Procedure 56(f). Under that Rule, the Court may, "[a]fter giving notice and a reasonable time to respond," "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." On February 11, 2015, the Court issued an order notifying the parties that it would consider Defendants' request for summary judgment and inviting the parties to file anything they wish in support of their respective requests for summary judgment or in opposition to the opposing party's request for summary judgment by March 13, 2015. On March 6, 2015, Plaintiff filed a response in opposition to Defendants' request for summary judgment.

The parties' summary judgment requests are now ready for decision. For the reasons that follow, the Court will grant summary judgment in favor of Defendants.

## II. BACKGROUND[1]

On September 16, 2011, Plaintiff sustained minor injuries after being assaulted by an unknown prisoner in the "800 unit" of SRF. *See* Pl. Decl. ¶ 2 (ECF No. 38 Page ID 263); Patient's Authorization for Disclosure of Healthcare Records (ECF No. 1 Page ID 15). The assault occurred one day after an anonymous threatening note was slid under Plaintiff's door. Pl. Decl. ¶ 1.

---

[1] The background is gleaned from the evidence attached to the parties' pleadings and motion papers.

Although the note is written in slang and partially incomprehensible to the Court, *see* Note (ECF No. 1 Page ID 12), Plaintiff viewed the note as a threat to himself and his friend, another prisoner by the name of Eckstein, who is white. Pl. Decl. ¶¶ 1, 3. Apparently, Eckstein owed a debt to another prisoner, and that debt was being imputed to Plaintiff due to his friendship with Eckstein. *Id.* ¶ 1.

Plaintiff and Eckstein were both placed in temporary segregation pending an investigation into the incident. Winn Aff. ¶ 4 (ECF No. 40 Page ID 314-17). The investigation was conducted by a prison official named A. Best, who is not a defendant in this case. Requests for Protection/Investigation Reports (ECF No. 40 Page ID 318-19). Both Plaintiff and Eckstein requested to be housed in protective custody following the assault on Plaintiff. Winn Aff. ¶ 3. The requests were reviewed by the prison's security classification committee, a two member committee consisting of Defendant Winn, the deputy warden at the time, and another individual. *Id.* ¶ 5. Winn determined that both prisoners could safely be released into the general prison population; neither was placed in protective custody and neither was returned to the unit in which the assault on Plaintiff took place. *Id.* ¶¶ 5, 7-8.

However, Eckstein was placed in a more secure unit than was Plaintiff. Specifically, Plaintiff was returned to "level II general population," whereas Eckstein was returned to "level IV general population." *Id.* ¶¶ 7-8. Although the

unit in which Eckstein was placed is more secure than the unit in which Plaintiff was placed, prisoners in Eckstein's unit have "fewer privileges" than do prisoners in Plaintiff's unit. *Id.*

Defendant Winn decided that Plaintiff and Eckstein should be returned to separate units "because the plaintiff was allegedly assaulted due to a debt owed by Eckstein, so removing him from association with Eckstein would remove any danger." *Id.* ¶ 6. In addition, prison officials suspected Plaintiff and Eckstein of being involved in a homosexual relationship; because "sexual relationships are prohibited by prison rules. . . . they could not be housed together." *Id.*

Moreover, Defendant Winn placed Eckstein in a more secure unit than the unit he assigned to Plaintiff because Winn deemed Eckstein to be a more vulnerable prisoner than Plaintiff. The paperwork governing Eckstein's request for protective custody reflects that Eckstein was transferred from a different prison to SRF in May 2011, about four months before the assault on Plaintiff occurred, because a prisoner at Eckstein's previous institution was "pressing him for sex." Request for Protection/Investigation Report (ECF No. 40 Page ID 319). In light of Eckstein's history of possible sexual victimization at the prior prison and Plaintiff's lack of any such history, Defendant Winn placed Eckstein in a more secure unit. According to Winn, "Eckstein was placed in level IV general population due to his prior complaint of being pressed for sex and this additional

assaultive situation involving his alleged homosexual lover, the plaintiff." *Id.* ¶ 8. In addition, Winn believed that "it could very well be that the assault on [Plaintiff] was a fight over Eckstein" and that Eckstein required additional protection for that reason. *Id.*

### III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

### IV. ANALYSIS

As stated, the sole remaining claim in this case is brought under the Equal Protection Clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473

U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394 (1982)). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974 (1974). "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (internal quotation marks and citation omitted).

Defendants argue that Plaintiff cannot satisfy either element of the *Jones* framework. Defendants acknowledge that Plaintiff and Eckstein were treated differently inasmuch as Eckstein was assigned to a more secure unit than the unit to which Plaintiff was assigned. However, Defendants argue that the two were not similarly situated because Eckstein required additional protection due to his possible sexual victimization:

> Eckstein was housed at [SRF] due to his complaint of being pressed for sex at a prior prison. Upon learning that he was involved in a sexual relationship with the plaintiff and that the plaintiff had been assaulted due to his "friendship" with Eckstein, it was appropriate to place Eckstein in a higher security level to prevent him from being further sexually victimized by the plaintiff or others. The plaintiff did not have any similar history, so the two were not similarly situated.

7

Defs.' Resp. at 5 (ECF No. 39 Page ID 296). The evidence supports Defendants' argument that Plaintiff and Eckstein were not similarly situated.

"When evaluating whether parties are similarly situated, 'courts should not demand exact correlation, but should instead seek relevant similarity.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864-65 (6th Cir. 2012) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). In other words, to be similarly situated, comparators must be "in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 2331 (1991).

Here, the evidence indicates that Plaintiff and Eckstein were not similarly situated "in all relevant respects." The investigative paperwork governing Eckstein's request for protective custody indicates that Eckstein was transferred from a different prison a mere four months before the assault on Plaintiff because a prisoner at Eckstein's previous institution was "pressing him for sex." Request for Protection/Investigation Report (ECF No. 40 Page ID 319). Based on Eckstein's prior history of possible victimization, along with the fact that the prison's investigation into the assault on Plaintiff revealed a possible homosexual relationship between Plaintiff and Eckstein at Eckstein's new institution – an institution to which Eckstein was transferred in the first place so that he would no longer be "press[ed] . . . for sex" – Defendant Winn decided that Eckstein should be housed in a more secure unit than Plaintiff. *See* Winn Aff. ¶ 8 ("Prisoner

Eckstein was placed in level IV general population due to his prior complaint of being pressed for sex and this additional assaultive situation involving his alleged homosexual lover, the plaintiff."). Because the record contains no evidence on which a reasonable jury could rely to conclude that Plaintiff's history included vulnerabilities similar to those in Eckstein's history, the Court concludes that the two are not similarly situated as a matter of law.

Plaintiff attacks a factual foundation underlying Defendants' argument that Plaintiff and Eckstein are not similarly situated. As discussed, Defendant Winn treated Plaintiff and Eckstein differently because, unlike Plaintiff, Eckstein was deemed at risk for sexual victimization both at his prior institution and at SRF. Plaintiff vehemently denies involvement in a homosexual relationship with Eckstein and states that Defendants have presented no evidence showing that Eckstein was being sexually victimized by Plaintiff or other prisoners at SRF. Plaintiff also points out that Eckstein was not seeking protective custody because he feared unwanted sex; rather, he requested protective custody because he feared that he would be assaulted next due to a debt that he purportedly owed. In sum, Plaintiff contends that a fact on which Defendant Winn relied to justify his decision to treat Plaintiff and Eckstein differently is not, in fact, true. And because that fact is not true, Defendant Winn's real motivation for the disparate treatment, according to Plaintiff, must have been race.

9

The Court rejects Plaintiff's argument for the following reasons. First, the evidence reflects that part of the reason why Eckstein was assigned to a more secure unit was because of his previous history of possible sexual victimization at the prior institution. Plaintiff does not dispute that history, nor does he argue that his own history includes something similar. This undisputed distinction between Plaintiff and Eckstein is alone sufficient to render the two not similarly situated because a history of being "pressed . . . for sex" would alone justify Defendant Winn's decision to place Eckstein in a more secure housing assignment.

Second, it not relevant whether Plaintiff and Eckstein were actually involved in a homosexual relationship or whether Eckstein was at risk for sexual victimization at SRF. Rather, because "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 563 (1977), the relevant inquiry is what Defendant Winn believed at the time he made the housing assignment decisions at issue here. And what Defendant Winn believed at the time is reflected in the investigative paperwork governing the respective requests for protective custody of Plaintiff and Eckstein. That paperwork indicates, based on an investigation into the assault on Plaintiff, that Plaintiff and Eckstein "were involved in an alleged homosexual relationship"

10

and that the two were "alleged homosexual lover[s]."[2] This is the information that Defendant Winn had before him when he decided where to house Plaintiff and Eckstein following the assault on Plaintiff. Although Plaintiff states repeatedly in his brief that he and Eckstein were not homosexual lovers and that Eckstein was not at risk for sexual victimization at SRF, he presents no evidence that Defendant Winn knew this when he assigned Eckstein to a more secure housing unit. Thus, there is no evidence on which a reasonable jury could rely to conclude that Defendant Winn acted with a discriminatory animus when he made the housing assignments in question. Therefore, Plaintiff has not satisfied his burden of showing that Defendant Winn acted with purposeful discriminatory intent. *See McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987) ("[A] defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.'" (quoting *Whitus v. Georgia*, 385 U.S. 545, 550, 87 S. Ct. 643, 646 (1967)).

Finally, Plaintiff contends that his equal protection rights were violated after an incident that occurred on October 20, 2011. However, Plaintiff does not allege that he was treated less favorably than someone outside his protected class in connection with that specific incident. Therefore, Plaintiff's equal protection claim arising out of that incident is not plausible. *See Jones*, 279 F.3d at 946-47

---

[2] As noted, the investigation was not conducted by Defendant Winn; it was conducted by A. Best, who is not a named defendant in this case.

(requiring prisoner asserting equal protection claim to demonstrate that "he is similarly situated with other prisoners who received more favorable treatment").

## V.  CONCLUSION

For the reasons stated above, (1) Plaintiff's motion for default judgment is summarily **DENIED**, Plaintiff's motion for summary judgment in **DENIED**; and (3) Defendants' request for summary judgment is **GRANTED**.


Dated: March 20, 2015                    s/PATRICK J. DUGGAN
                                         UNITED STATES DISTRICT JUDGE

Copies to:

Robert L. Dykes-Bey
Allan J. Soros, Esq.
Clifton B. Schneider, Esq.